IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| WAYNE ROSS, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | 5:15-cv-00077-MTT-CHW |
| | : | |
| GLEN JOHNSON, | : | Proceedings Under 28 U.S.C. § 2254 |
| | : | Before the U.S. Magistrate Judge |
| Respondent. | : | |
| | : | |

### REPORT AND RECOMMENDATION

Before the Court is Petitioner Wayne Ross' petition for federal habeas corpus relief filed pursuant to 28 U.S.C. § 2254. (Doc. 1). Because Petitioner is not entitled to habeas relief, it is **RECOMMENDED** that his petition be **DENIED**.

### BACKGROUND

On February 21, 2007, a Putnam County jury returned a verdict on a five count indictment against petitioner. (Doc. 8-10, p. 2). Mr. Ross was found guilty of count two, Sale of Cocaine; count three, Possession of Cocaine with Intent to Distribute; and count four, Obstruction of an Officer. (Doc. 8-10, p. 2). Petitioner was sentenced to life on count two, life on count three, consecutive to count two, and twelve months on count four, concurrent to counts one and two. On March 13, 2007, Petitioner filed his motion for new trial. (Doc. 8-10). Petitioner's counsel argued that he was entitled to a new trial because (1) his trial counsel was ineffective for failing to file a motion to suppress and a motion to sever counts; (2) he was inappropriately sentenced as a recidivist because the State did not properly serve defense counsel notice; and (3) the verdict was not authorized by the evidence with regard to count two because the evidence introduced was dated April 18th and the events alleged in count two occurred on

1

April 20th. (Doc. 8-10, pp. 19-22). The court denied the motion for new trial, and Petitioner filed his notice of appeal on May 6, 2011. (Doc. 8-25, p. 7). The judgment was affirmed by the Court of Appeals of Georgia on January 26, 2012. *Ross v. State*, 313 Ga. App. 695 (2012).

On January 4, 2013, petitioner filed a petition for habeas relief in state court which was denied on April 14, 2014. (Doc. 8-29, pp. 3, 11). Petitioner primarily argued that trial counsel and appellate counsel were deficient in their treatment of the crime lab reports. The results of three crime lab reports were introduced by stipulation at the trial. The crime lab reports, identified by their agency reference number, were crime lab report 1368, 2619, and 3867. (Doc. 8-3, p. 2). Petitioner acknowledges that crime lab reports 1368 and 2619 correspond to the physical evidence in the case. (Doc. 8-3, p. 2). Crime lab report 2619 corresponded to State's trial exhibit six, the evidence collected in relation to count three. (Doc. 8-3, p. 2, 28-29). Crime lab report 1368 corresponded to state's trial exhibit five, the evidence collected in relation to count two. (Doc. 8-3, pp. 2, 24-26). However, Petitioner argued that Crime lab report 3867 had no relation to any evidence in his case because the "case individual" on crime lab report 3867 was Petitioner's son, Ross Wayne, Jr. (Doc. 8-3, p. 36). Moreover, Petitioner argued that he was never served with a crime lab report corresponding to state's exhibit one. State's exhibit one was marked with agency reference number 1367, and would have corresponded to count one of the indictment. (Doc. 8-3, p. 21; Doc. 8-4, p. 12). The certificate of service demonstrating that defense counsel was served with the crime lab reports shows that counsel was served with lab report 1368, 2619, and 3867.

A certificate of probable cause to appeal was dismissed by the Supreme Court of Georgia on September 8, 2014, because petitioner failed to file a notice of appeal in the state habeas court. (Doc 8-30). On October 6, 2014, the Supreme Court of Georgia granted petitioner's

2

motion for reconsideration and vacated its September 8, 2014, order. (Doc. 8-31). On March 2, 2015, petitioner's application for certificate of probable cause to appeal was denied. (Doc. 8-32). Petitioner filed his petition for a federal writ of habeas corpus on March 10, 2015. (Doc. 1).

## NEED FOR AN EVIDENTIARY HEARING

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244, factual determinations made by a state court are presumed to be correct but can be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). On the other hand, if an applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that: (A) the claim relies on: (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for a constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2254(e)(2). After a careful review of the record, and in light of the statement of facts presented herein, no evidentiary hearing is warranted in this case.

## LEGAL STANDARDS

In accordance with the provisions of AEDPA, federal courts are prohibited from granting habeas relief with respect to any claim adjudicated on the merits in state court unless that decision either: (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d); *Wellons v. Warden, Ga. Diagnostic and Classification*

*Prison*, 695 F.3d 1202, 1206 (11th Cir. 2012). Not only is this standard "difficult to meet," *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011), but it also is a "highly deferential standard for evaluating state-court rulings . . . which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

A state court's decision is "contrary to" clearly established federal law if either "(1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). An "unreasonable application" of clearly established federal law may occur if the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case." *Id*. "An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Id*.

When a "state court's application of federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). Similarly, when reviewing a state court's decision applying federal law, a federal court must not determine the accuracy of the result, but instead, whether the result was objectively unreasonable, which is "a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). A state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**GROUNDS FOR RELIEF**

In order to succeed on a claim of ineffective assistance of counsel, the petitioner must demonstrate both that counsel's performance was deficient and that he was prejudiced by this

deficiency. *Johnson v. Alabama*, 256 F.3d 1156, 1175-76 (11th Cir. 2001). These are the two prongs of an ineffective assistance of counsel claim as determined by the United States Supreme Court.[1] *Strickland v. Washington*, 466 U.S. 668 (1984). The first prong, deficient performance, is found only when the petitioner can show that the errors made were serious enough that counsel could not be considered to be "functioning as the 'counsel' guaranteed [] by the Sixth Amendment." *Id*. at 1176. Counsel's performance is considered "through a deferential review of all the circumstances from the perspective of counsel at the time of the alleged error." *Baldwin v. Johnson*, 152 F.3d 1304, 1311 (11th Cir. 1998). Accordingly, every effort must be made to limit the "distorting effects" hindsight may have on evaluating an attorney's performance when determining if that performance fell within "*Strickland's* wide range of reasonable professional conduct." *Mills v. Singletary*, 161 F.3d 1273, 1286 (11th Cir. 1998). This wide range of reasonable professional conduct does not test if counsel could have done more or if a better attorney would have done more because *Strickland* is an objective standard and does not require perfection. *Waters v. Thomas*, 46 F.3d 1506, 1513 (11th Cir. 1995).

On the second prong of *Strickland*, the petitioner bears the burden of showing that a reasonable probability exists that but-for counsel's errors the result would have been different. *Strickland*, 466 U.S. at 694. It is not enough that a habeas petitioner prove that the error had some conceivable effect on the outcome of the proceeding; instead, the probability of a different result must be sufficient to undermine confidence in the outcome of the proceeding by proof of errors that the proceeding was rendered unfair. *Johnson*, 256 F.3d at 1177. If the prejudice

---

[1] "An ineffective assistance of appellate counsel claim is considered under the same two-part test announced in Strickland." *Reutter v. Secretary for Dept. of Corrections*, 232 Fed. Appx. 914, 916 (11th Cir. 2007) (citing *Grubbs v. Singletary*, 120 F.3d 1174, 1176 (11th Cir.1997). Therefore, to prevail, petitioner must prove (1) trial counsel's error and the resulting prejudice, (2) that appellate counsel committed error and prejudice resulted when he failed to raise trial counsel's error and resulting prejudice, and (3) he must overcome any reasonable argument that it was not error and/or it was not prejudice when appellate counsel failed to bring up trial counsel's ineffectiveness.

5

prong cannot be established, Courts may decline to address the sufficiency of counsel's performance. *Waters*, 46 F.3d at 1510.

Judicial scrutiny under *Strickland* is highly deferential and surmounting it "is never an easy task". *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Establishing a *Strickland* claim through a section 2254 habeas claim is "all the more difficult" because the highly deferential standards of both *Strickland* and Section 2254 work in "tandem." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). To be successful, a petitioner must not merely prove unreasonableness under *Strickland* but must overcome "any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. As such, "The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

Ground one of petitioner's petition asserts that appellate counsel was deficient for failing to raise on appeal that trial counsel admitted and stipulated to "irrelevant and prejudicial evidence." (Doc. 1-1, p. 4). Petitioner asserts that trial counsel stipulated to crime lab report 3867, and this report had nothing to do with petitioner's case. (Doc. 11, p. 4). In fact, crime lab report 3867 was an analysis of a substance taken in reference to petitioner's son, Wayne Ross, Jr. (Doc. 1-1, p. 4). In support of this proposition, Petitioner argues that he was in jail at the time his son was arrested for cocaine related charges, and the agency reference number on crime lab report 3867 matches the case number on the warrant for Wayne Ross, Jr.'s arrest.[2] (Doc. 1-1, p. 4). Petitioner argues that trial counsel failed to object to crime lab report 3867 because of a lack

---

[2] Crime Lab Report 3867 lists "Wayne Ross, Jr." as the "Case individual." (Doc. 8-7, p. 6).

of attention, that introduction of the evidence bolstered the state's case, and that appellate counsel should have raised these issues on Petitioner's direct appeal. (Doc. 1-1, pp. 5-7).[3]

Ground two of the petition asserts that appellate counsel was deficient for failing to raise on appeal that trial counsel did not compel service of the correct crime lab report. Petitioner argues that trial counsel was never served with crime lab report 1367, that petitioner was entitled to the report at trial, and that it was deficient performance for trial counsel to fail to compel service. (Doc. 1-1, p. 7).

Petitioner alleges in ground three that appellate counsel was ineffective for failing to raise a claim that trial counsel was ineffective for failing to object to the admission of the three crime lab reports because they were not disclosed in a timely manner. Petitioner alleges that he opted into reciprocal discovery, and the State failed to comply with the timeframe mandated by the governing Georgia statute. Specifically, Petitioner argues that the lab reports were served on February 19, 2007, one day before trial, although Georgia law requires service ten days before trial. The late service, argues Petitioner, deprived trial counsel of the ability to properly consider the reports. (Doc. 1-1, pp. 7-8).

Finally, Petitioner alleges in ground four that his sentence is void because the sentencing judge failed to exercise discretion at sentencing. (Doc. 6, pp. 5-6). Petitioner alleges that the State encouraged the Court to sentence the petitioner "to the max" because he was a career criminal. (Doc. 6, p. 2). Petitioner further alleges that defense counsel argued the court should not impose recidivist treatment. (Doc. 6, p. 2). Therefore, petitioner argues, the sentencing judge failed to exercise discretion when he sentenced petitioner to life on count two and three. (Doc. 6, pp. 3, 4).

---

[3] Petitioner's state habeas brief contains a section "IV" in which petitioner argues that each of the three deficiencies alleged amounted to ineffective assistance of counsel under *Strickland*. Thus, petitioner fairly presented this federal claim to the state habeas court.

7

## INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL:
## GROUNDS ONE, TWO, AND THREE

Petitioner was indicted on five counts. Count one of the indictment charged petitioner with sale of cocaine on April 18, 2006; count two of the indictment charged petitioner with sale of cocaine on April 20, 20016; count three of the indictment charged petitioner with possession of cocaine with intent to distribute on July 14, 2006; count four of the indictment charged petitioner with obstruction of an officer on July 14, 2006, and count five charged petitioner with failure to maintain lane on July 14, 2006. Petitioner was convicted on counts two, three, and four of the indictment. (Doc. 8-9, pp. 11-13).

As an initial matter, the evidence shows that Petitioner was served with at least three crime reports. Each of these crime lab reports contains an agency reference number which corresponds to an identical number placed on physical evidence. Petitioner was served with crime lab reports corresponding to physical evidence marked with agency reference number 1368, 2619, and 3867. (Doc. 8-3, p. 18). The physical evidence presented in this case contained the agency reference numbers 1367, 1368, and 2619. (Doc. 8-3, pp. 20-29). Thus, Petitioner was at least served with a crime lab report not corresponding to any evidence introduced at Petitioner's trial.

Crime lab report 1368 showed a positive result for cocaine and corresponds to state Exhibit 5. State Exhibit 5 formed the basis for Petitioner's conviction on count two. Crime lab report 2619 corresponded state Exhibit 6 and showed a positive result for cocaine. Exhibit 6 formed the basis for petitioner's conviction on count three. Crime lab 3867 does not correspond to evidence introduced in Petitioner's case and appears to have been related to physical evidence in a case against Petitioner's son, Wayne Ross, Jr. State Exhibit 1 corresponds to count one, but

the record does not indicate that the State produced a crime lab report showing that Exhibit 1 tested positive for cocaine. Petitioner was acquitted on count one of the indictment, however.

The record does not indicate that any crime lab report was introduced into evidence or went out with the jury. (See Doc. 8-18, pp. 8-10). Instead, the following stipulation was read on the record:

> The Court: And ladies and gentlemen of the jury if the state will proffer the opinion of the crime lab.
>
> Ms. Burleson(for the state): Yes, Your Honor. On State's Exhibit 1 on the drugs from the 18th of April, 2006, the forensic chemist, Jean Gibbs tested those drugs in accordance with her training and found that it was positive for cocaine less than one gram.
>
> On the 18th, she - - I'm sorry, that's the drugs on the 20th, 2006. Those were turned in. Ms. Gibbs also tested those drugs and they came back positive for cocaine, less than one gram.
>
> And, finally, as to the drugs which Deputy Manly received on July 14th, 2006, she tested those as well, Ms. Gibbs, a forensic chemist, and they were positive for cocaine, 3.54 grams.

(Doc. 8-18, p. 8-9). Defendant's counsel did not object to the admission of Exhibits 1, 5, and 6 – the actual cocaine, and stipulated "to the crime lab report as it has been introduced from the crime lab." *Id*. It is not explicit in the record what crime lab reports were being read or used. Thus, it is unclear if crime lab report 3867 or 1367 formed the basis of Exhibit's 1 positive test.

    **I.    Count Two of the Indictment**

Count two of the indictment charged Petitioner with the sale of cocaine on April 20, 2006. (Doc. 8-9, p. 12). The evidence against Petitioner with regard to the April 20, 2006 sale of cocaine consisted mainly of testimony by Officer Scott Pitocchelli, a confidential informant, an officer involved in chain of custody, the evidence itself, and a stipulation that the substance in evidence was cocaine.

Officer Scott Pitochelli testified that on April 20, 2006, he arranged for a confidential informant to purchase cocaine from Petitioner. (Doc. 8-13, pp. 15-17). The confidential informant called Petitioner and arranged for a drug buy.[4] (Doc. 8-13, p. 17). The CI met with Petitioner and bought forty dollars worth of cocaine. Office Pitochelli was nearby recording the transaction, and that recording was played for the jury during trial. Officer Pitocchelli identified Petitioner as the individual in the video. (Doc. 8-14, pp. 1-4).

Likewise, the confidential informant testified that on April 20, 2006, she called Petitioner to tell him that she wanted to buy some crack. (Doc. 8-15, p. 3). She subsequently met with Petitioner and gave him forty dollars in exchange for four crack rocks. (Doc. 8-15, p. 4-5). The confidential informant turned the evidence over to Deputy Harry Luke. (Doc. 8-15, p. 6). Deputy Luke sealed the crack rocks in a bag, marked the bag, and placed it in an evidence locker. (Doc. 8-16, p. 13-14). The evidence bag was retrieved by Lieutenant Horn who "dropped it off" in a secure lock box at the crime lab in Macon. (Doc. 8-18, p. 6). State's exhibit 5 was identified as being the same bag Deputy Luke placed in the evidence locker, Doc. 8-16, p. 14, and the same bag that Lieutenant Horn retrieved from the evidence locker and took to the Macon Crime Lab. (Doc. 8-18, p. 6.).

With regard to Petitioner's conviction on count two, it is unclear how the introduction of or stipulation to Crime Lab Report 3867 could have affected the outcome. The parties stipulated that the substance in State's Exhibit 5 was cocaine based on Crime Lab Report 1368, which was not admitted into evidence but is in the record. Petitioner has not identified any reason that counsel should have contested Report 1368

Even assuming that trial counsel was ineffective for stipulating to the results of Report 3867, there is no reasonable probability that the outcome would have been different on count two

---

[4] Officer Pitocchelli listened in on this phone call.

had counsel objected or refused to stipulate. Petitioner discussed selling cocaine with a confidential informant, met with that informant, and exchanged a white rock-white substance for money. A video recording of this series of events was played for the jury. The substance seen on the video was the same substance introduced at trial as State's Exhibit 5, and it tested positive for cocaine. The evidence against Petitioner was overwhelming and the apparent stipulation to Crime Lab Report 3867 as to count one had no relevance to the state's case on count two. Whatever prejudice he suffered from the production of the irrelevant crime lab report does not change these facts.

Likewise, the fact that Exhibit 5 was marked as collected on April 18, 2006, but was described at trial to have been the substance recovered on April 20, 2006, does not mean that Petitioner was prejudiced when his trial counsel stipulated to its introduction. The discrepancy was relevant and certainly affected the weight of the evidence. Trial Counsel failed to develop this discrepancy during cross-examination or closing arguments, and there is no reasonable strategy for failing to do so. Chain of custody is of particular importance in drug trials where the evidence consists largely of offer testimony. However, even if this error rises to the level of deficiency as contemplated by *Strickland*, there is not a reasonable probability that the outcome of the trial would have been different. Several witnesses identified the exhibit as the substance purchased from Petitioner on April 20, 2006. Therefore, grounds one, two, and three of petitioner's complaint are without merit for his conviction on count two.

## II.     Count Three of the Indictment

Count three of the indictment charged Petitioner with possession of cocaine with intent to distribute on July 14, 2006. (Doc. 8-9, p. 12). The evidence against Petitioner with regard to count three consists mainly of the testimony of Officer Manley, the evidence itself, a chain of

custody officer, and a crime lab report. Officer Manley testified that on July 14, 2006, he performed a traffic stop on Petitioner for failing to maintain his lane. (Doc. 8-16, p. 18). Officer Manley noticed that Petitioner was concealing a clear plastic baggie in his hand or pocket. Officer Manley grabbed Petitioner's arm in an attempt find out what Petitioner was holding and Petitioner fled.[5] (Doc. 8-16, pp. 20-21). Petitioner was then seen throwing something onto the roof of a nearby house. (Doc. 8-17, pp. 2). A clear plastic baggie was recovered from the roof, and Officer Manley testified that it was the same baggie Petitioner was holding during the traffic stop. The baggie was sealed in an evidence bag, marked, and put in an evidence locker. (Doc. 8-17, p. 3). The baggie stayed there until it was transported to the Crime Lab in Macon by Lieutenant Horn. (Doc. 8-18, p. 6). As stipulated to by the parties, the substance inside the bag tested positive for cocaine. This stipulation was supported by the results shown in the crime lab report numbered 2619, which was not admitted into evidence but is in the record.

Given this evidence, Petitioner fails to show a reasonable probability that but-for counsel's errors the result would have been different. Petitioner fled a traffic stop carrying a plastic baggie which he was seen throwing onto a nearby roof. This baggie was retrieved and submitted to the crime lab. It tested positive for the presence of cocaine as shown by a Crime Lab Report 2619, which is not in dispute. Even assuming it was deficient within the meaning of *Strickland* for trial counsel to stipulate to Crime Lab Report 3867 as to count one, the evidence presented against Petitioner with regard to count three was enough to convict Petitioner. Moreover, Petitioner's counsel had access to the crime lab report prior to trial, and Petitioner has not shown any basis to contest its conclusion that the substance tested positive for cocaine.[6]

---

[5] This also formed the basis of petitioner's obstruction charge. The errors complained of do not reach to his conviction for obstruction.
[6] The discrepancy in dates in State's Exhibit 5 has no relevance to Count 3 because Exhibit 5 has no relevance to Count 3.

12

Therefore, grounds one, two, and three of Petitioner's complaint are without merit with regard to his count three conviction.

## STATE HABEAS COURT

The state habeas court determined that Petitioner's appellate counsel had been an attorney for twenty-five to thirty years, prepared for the appeal by reviewing the transcripts, discovery, and previous counsel's file, and "raised the most viable and meritorious issues on appeal." (Doc. 8-29, p. 4). Appellate counsel was aware that one of the crime lab reports introduced at the trial was labeled "Wayne Ross, Jr." but did not raise this on appeal because he thought it was not the best way to attack the convictions. *Id.* at 6. Instead, appellate counsel focused on the crime lab report marked 2619, arguing that trial counsel was ineffective for failing to object to its introduction on the basis of an erroneous date. The evidence corresponding to Crime Lab Report 2619 was labeled "04-18-06" but was related to Petitioner's conviction for selling drugs on April 20, 2006. *Id*. at 5.

The habeas court further determined that trial counsel was served with the three crime lab reports on February 19, 2007, and there was no evidence introduced at the hearing demonstrating that trial counsel was not provided with the crime lab test results that related to his convictions. *Id*. at 5, 9. The habeas court agreed with the Georgia Court of Appeals and determined that the discrepancy in dates on lab report 2619, as well as the discrepancy in name on lab report 3867, went to the weight rather than the admissibility of the evidence. *Id*. at 10. Therefore, the habeas court reasoned, Petitioner failed to demonstrate a reasonable probability that the outcome of his appeal would have been different but-for the alleged errors of his appellate counsel. *Id*. at 10.

Petitioner's case was adjudicated on the merits by the state habeas court as the above shows. (Doc. 8-29). The State Habeas Court identified *Strickland* as the relevant federal law,

produced findings of fact, and applied the relevant federal law to those facts. The State Habeas Court determined that there was no reasonable probability that the outcome would have been different had counsel raised the issues on appeal. *Id*. at 10. The court appropriately noted that the discrepancies in the Crime Lab Reports were relevant but that the two drug counts Petitioner was convicted on corresponded to reports served on trial counsel and introduced at trial. *Id*. at 9-10. These reports corresponded to the evidence presented, tested the evidence for the presence of cocaine, and the tests determined that the evidence was positive for cocaine. *Id*. at 9-10. The state court's finding was not an objectively unreasonable application of *Strickland* to the facts of petitioner's case. Therefore, grounds one, two, and three are without merit.

## FAILURE TO EXERCISE DISCRETION: GROUND FOUR

The state introduced seven certified copies of convictions in aggravation of sentencing. (Doc. 8-22, pp. 4-6). These certified copies of conviction were labeled state's exhibit seven through thirteen and included the following felony convictions: one aggravated assault with a deadly weapon, one burglary, one possession of a firearm by a convicted felon, one possession of a controlled substance, and two possession of a controlled substance with intent to distribute. (Doc. 8-22, pp. 4-6). The state also introduced Exhibit 13, a misdemeanor conviction for affray. (Doc. 8-22, p. 5). The defense presented no evidence in mitigation. (Doc. 8-22, p. 6).

The state argued that petitioner was a career criminal with numerous convictions related to drugs, that he was a danger to the community, and that he should be sentenced to the maximum penalty allowable by law. (Doc. 8-22, p. 6). The Defense argued that petitioner's probation should be revoked in full until 2012 and his sentence should run concurrent to that revocation. The defense asked that the judge not impose recidivist treatment. (Doc. 8-22, p. 6). The Sentencing Judge declined to follow defense counsel's recommendation and sentenced

14

petitioner as a recidivist. (Doc. 8-22, p. 11). The sentencing judge intended to impose a sentence that would "keep [petitioner in the penitentiary] for a few minutes" and imposed two consecutive life sentences. (Doc. 8-22, p. 9).

Petitioner argues that his sentence is void because the sentencing judge failed to exercise discretion with regard to the imposition of his two consecutive life sentences.[7] Respondent argues that ground four is procedurally defaulted because petitioner failed to raise this issue in his state habeas corpus petition. (Doc. 7-1, p. 8). Petitioner agrees that he failed to raise the issue "in the court below," and a careful review of the state habeas proceedings reveals that he did not in fact raise the issue. (Doc. 6, p. 2). However, petitioner argues that the sentencing order "exceed[ed] the jurisdiction of the court and can be attacked at any time." (Doc 6, p. 4).

Pursuant to O.C.G.A. 9-14-51, "all grounds for relief claimed by a petitioner for writ of habeas corpus shall be raised by a petitioner in his original or amended petition" unless a judge finds grounds on a second petition which could not have been reasonably raised in the original or amended first petition. Pursuant to 28 U.S.C. 2254, applications for a writ of federal habeas corpus shall not be granted unless "the applicant has exhausted the remedies available in the courts of the state." When a claim is both unexhausted in state court and procedurally barred in state court, the barred claim is treated as no basis for federal habeas relief. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998). With regard to the interaction of O.C.G.A. 9-4-51 and U.S.C. 2254, the state bar "can and should be enforced in federal habeas proceedings

---

[7] Petitioner's reliance on *Scott v. State* is misguided. In the instant case, the State did not argue that the judge had to sentence petitioner to the maximum penalty nor did the sentencing judge indicate that he had to sentence petitioner to the maximum penalty. (Doc. 8-22, pp. 4-11). In fact, the judge stated that the reason he sentenced petitioner to life was because of his history of criminal convictions. (Doc. 8-22, p. 9). The 2006 version of O.C.G.A 16-13-30 authorizes a life sentence for a relevant second or subsequent offense. However, subsection (a) of O.C.G.A. 17-10-7 does not apply to the second offense. O.C.G.A. 16-13-30(d) (2006). Petitioner was sentenced under subsection (c) of O.C.G.A. 17-10-7. (Doc. 8-10, p. 1)

against claims never presented in state court." *Chambers v. Thompson*, 150 F.3d 1324, 1327 (11th Cir. 1998).

In the case sub judice, petitioner has not presented his fourth ground of relief to a state court, and he has already filed a state habeas petition.[8] Thus, the claim is unexhausted and he would not be allowed to present it to a state habeas court pursuant to O.C.G.A. 9-14-51. The claim is procedurally defaulted.

## CONCLUSION

After a careful review of the record, it is **RECOMMENDED** that the instant Section 2254 petition be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

---

[8] Petitioner argued on direct appeal that "trial counsel erred in not objecting to the state's notice of intent to seek recidivist sentencing because the notice was not given to the defense prior to the start of the trial." Ross, 313 Ga. App. at 415(2012). Likewise, Petitioner argued "that the trial court erred in sentencing him as a recidivist [] because the state's notice was untimely. *Id.*

**SO RECOMMENDED**, this 3rd day of September, 2015.

            s/ Charles H. Weigle
            Charles H. Weigle
            United States Magistrate Judge